# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CURTIS WILEY,

Plaintiff,

v.                                                    CIVIL ACTION NO.   2:13-cv-02952

ASPLUNDH TREE EXPERT CO.,

Defendant.

## MEMORANDUM OPINIONAND ORDER

Pending is Defendant Asplundh Tree Expert Co.'s motion for dismissal of Count Four of Plaintiffs' First Amended Complaint [ECF 15].   For the reasons set forth below, the Court **GRANTS** the motion.

### I.      BACKGROUND

This putative collective action centers on allegations that Defendant Asplundh Tree Expert Co. ("Asplundh") failed to pay overtime to its employees for pre-shift and post-shift work in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the West Virginia Wage Payment Collection Act ("WPCA"), West Virginia Code, Section 21–5–3.   Plaintiffs also claim that Defendant retaliated against them by wrongfully firing them after they filed their lawsuit.

Plaintiffs' original complaint was filed in the circuit court of Lincoln County, West Virginia.   (ECF 2–1.)   That pleading alleged two counts, each premised on Asplundh's failure to pay overtime.   The first count is premised on the FLSA; the second on the WPCA.   Asplundh

later removed the case to federal court invoking this Court's federal question and diversity jurisdiction under 28 U.S.C. §§ 1331 and 1332(a).  (ECF 2 at 4, 6.)  Thereafter, Plaintiffs filed their First Amended Complaint ("the amended Complaint").  (ECF 12.)  To date, about 46 plaintiffs have joined the suit.

The following allegations of fact are set forth in Plaintiffs' amended Complaint.

Curtis Wiley and allegedly similarly situated Plaintiffs are former employees of Asplundh. (*Complaint,* ECF 12 at 1–2.)  The Plaintiffs worked four and six days a week.  (*Id.* at 2.)  Before heading off to remote worksites, Asplundh required Plaintiffs to arrive at a location known as "The Lot" one to two hours before the beginning of their 7:00 a.m. shifts.   Similarly, Asplundh required Plaintiffs to report back to The Lot after their shifts ended at 5:30 p.m.  (*Id.*)  Asplundh directed and controlled Plaintiffs' activities during these pre-shift and post-shift hours and were tasked with, among other things, cleaning out Asplundh's work trucks, conducting maintenance and a variety of mechanical inspections of the trucks, fueling the trucks, and obtaining and loading equipment on to the trucks during the off-shift hours.  (*Id.* at 3, 4.)  Asplundh, however, paid Plaintiffs wages only for the time worked during the shift, that is, from 7:30 a.m. to 5:30 p.m., and not for the pre-shift and post-shift time.  (*Id.* at 2–3.)  Asplundh would discipline or terminate Plaintiffs if they did not arrive at The Lot at the designated pre-shift time.  (*Id.* at 4.)  At the end of their shifts, Asplundh required Plaintiffs to return Asplundh's trucks and equipment to the Lot after the shift ended.  (*Id.* at 5.)  Their post-shift activities lasted one to two hours per day.  (*Id.*) Plaintiffs assert that these pre- and post-shift activities were "integral and indispensable" to Asplundh's principal business activities.  (*Id.* at 5, 6.)  Asplundh occasionally withheld an hour of pay from an entire work crew if any one Plaintiff arrived at the remote work sites one minute

past 7:30 a.m.  (Id. at 5.)  Similarly, Asplundh occasionally docked Plaintiffs' wages one full

hour if Plaintiffs left their remote worksites one minute or more before 5:00 p.m.  (*Id.* at 6.)

Plaintiffs allege that "[i]n many weeks, Plaintiffs worked over forty (40) hours", but were

directed by Asplundh to report only forty hours on their time sheets "in contravention of Federal

and State law."  (*Id.* at 3.)  Plaintiffs' Complaint cites generally the FLSA and the WPCA for the

proposition that these statutes mandate that Asplundh pay wages for all hours worked, both regular

and overtime pay.  (*Id.*)  They allege that Asplundh's docking of wages for failure to arrive at a

remote worksite by 7:30 a.m. and for leaving a remote worksite before 5:00 p.m. constitutes "a

wrongful withholding and wrongful assignment of the Plaintiffs' wages."  (*Id.* at 7.)  In so doing,

Asplundh failed to follow West Virginia law prohibiting unlawful assignment of wages.  (*Id.*)

Also, Asplundh is alleged to have failed to pay Plaintiffs' wages every two weeks as required by

state law.  (*Id.*)

Plaintiffs further allege that after they filed their lawsuit Asplundh retaliated against

Plaintiffs in several respects, including changing the location where Plaintiffs returned their work

trucks at the end of the work day, refusing to compensate Plaintiffs for the increased costs incurred

by having to travel greater distances in their personal vehicles to arrive at the new and more distant

location, failing to provide necessary equipment to Plaintiffs, thus depriving Plaintiffs the ability

to work their full shifts, among other things.  (*Id*. at 8.)

The amended Complaint alleges four counts.  In Count 1, the amended Complaint

re-asserts the overtime compensation claim under the FLSA.  Count 2 states a violation of the

WPCA, but unlike the original complaint, the factual predicate for this count is no longer overtime

pay, but rather allegations that Asplundh engaged in unlawful assignment of wages when it docked

3

employees' wages.   Counts 3 and 4 each allege, respectively, wrongful discharge claims under the FLSA and under *Harless v. First Nat'l Bank,* 246 S.E.2d 270, 271 (W. Va. 1978).

## II.   LEGAL STANDARDS

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6).   "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."   *Republican Party of N. C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face."   *Robinson v. Am. Honda Motor Co., Inc*., 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

A complaint fails to state a viable claim when, viewing the well-pleaded factual allegations

as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; see also *Iqbal*, 556 U.S. at 662 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

### A.    *Defendant's Motion to Dismiss*

Defendant Asplundh raises three contentions in support of its motion to dismiss Count Four of Plaintiffs' Complaint: (1) Plaintiffs have failed to identify in their Complaint the "substantial public policy" element of the *Harless* claim and, thus, have failed meet federal pleading standards; (2) a *Harless* claim cannot be predicated on the WPCA; and (3) a *Harless* claim is preempted by FLSA.   (ECF 16.)

In response, Plaintiffs argue that they have "boldly asserted their rights and substantial public policy concerns by accessing the Courts of West Virginia (a right guaranteed by the Constitution of the State of West Virginia (Art. 3 § 17))."   (ECF 18 at 3.)   They argue that Asplundh has failed to cite "any West Virginia case law that holds that a company is free to commit retaliatory discharge, with impunity, when employees are fired for insisting that Defendant comply with wage laws."   (*Id*.)   They cite *Page v. Columbia Nat'l Res., Inc.*, 480 S.E.2d 817 (W. Va. 1996) and *McClung v. Marion Cnty Comm'n*, 360 S.E. 2d 221 (1987) in support of their position that West Virginia recognizes as a substantial public policy the

5

constitutional right to petition for redress of grievances in the context of wage claims.   They argue that the WPCA is a proper predicate for their *Harless* claim and that the claim is not preempted by the FLSA.

In its Reply, Asplundh reiterates that the Complaint does not contain any reference to a specific source of legal authority for the substantial public policy element of their *Harless* claim and, thus, the Complaint fails to meet the minimum pleading standards.   (ECF 20.)   Asplundh also argues that Plaintiff's *Harless* retaliation claim is based on the filing of the *original* complaint and not the amended complaint.   This is significant, Asplundh argues, because in the original complaint Plaintiffs only sought to recover overtime compensation.   Asplundh reasons that the theory of the retaliation claim must therefore be limited to the alleged failure to pay overtime and, because the FLSA is the exclusive remedy for such a claim, the *Harless* claim must fail. Asplundh also rejects Plaintiffs' argument that West Virginia case law recognizes a *Harless* claim based on unlawful assignment of wages, failure to timely pay full wages during regular work time, or failure to pay matching Social Security contributions.

B.   *Analysis*

1.   *Harless v. First National Bank*

In West Virginia, like many states, the law governing the relation of master and servant provides that "an employment unaffected by contractual or statutory provisions to the contrary, may be terminated, with or without cause, at the will of either party to the contract of employment. *Wright v. Standard Ultramarine & Color Co*., 90 S.E.2d 459, 468 (W. Va. 1955).   The West Virginia Supreme Court of Appeals carved out an exception to this general rule in *Harless v. First Nat'l Bank,* 246 S.E.2d 270, 271 (W. Va. 1978).   In *Harless,* the Court held that "where

employer's motivation for discharge is to contravene some substantial public policy principle, then employer may be liable to employee for damages occasioned by this discharge."   In *Feliciano v. 7-Eleven, Inc.*, 559 S.E.2d 713, 723 (W. Va. 2001), the Court noted that the following elements guide a court's analysis of whether an employee has successfully presented a wrongful discharge claim in contravention of a substantial public policy:

> (1)    whether clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in common law;

> (2)    whether dismissing employees under circumstances like those involved in plaintiff's dismissal would jeopardize the public policy;

> (3)    whether dismissal was motivated by conduct related to the public policy; and

> (4)    whether employer lacked overriding legitimate business justification for dismissal.

"A determination of the existence of public policy in West Virginia is a question of law, rather than a question of fact for a jury." Syl. Pt. 1. *Cordle v. Gen. Hugh Mercer Corp.*, 325 S.E.2d 111, 112 (1984).   To identify a substantial public policy, courts look "to established precepts in [the State's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, *Birthisel v. Tri–Cities Health Servs. Corp.,* 424 S.E.2d 606, 612 (1992).

> 2.    *Plaintiffs Fail to Show a Plausible* Harless *Claim under Federal Pleading Standards*

As an initial matter, the Court rejects Plaintiffs' contention that their *Harless* claim meets the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).   Plaintiffs argue that they have "boldly asserted their rights and substantial public policy concerns by accessing the Courts of West Virginia (a right guaranteed by

7

the Constitution of the State of West Virginia (Art. 3 § 17))."   Nowhere, however, in their initial or amended Complaints do they identify the substantial public policy that would animate their *Harless* claim.   As such, Defendant (and the Court) are left to speculate what the ground is for Plaintiffs' claim of entitlement of relief.   In order to determine whether Plaintiffs have shown that their *Harless* claim is plausible, they need to specify the source of legal authority that recognizes that a substantial West Virginia public policy is as a matter of law at stake in this case.   With no such assertion, there is no way a court could evaluate the plausibility of the claim.   Thus, Count 4 of the amended Complaint fails to meet federal pleading standards under *Iqbal* and *Twombly.*

> 3.   *West Virginia Has Not Expressly Recognized a Substantial Public Policy Arising from Article III, Section 17 of the West Virginia Constitution in the Context of a* Harless *claim*

The Court will assume for the sake of efficiency in this litigation that the Complaint properly identified Article III, Section 17 of the West Virginia Constitution as the source of authority for the substantial public policy element of Plaintiffs' *Harless* claim.   At the outset, the Court is cognizant that "the West Virginia courts have proceeded with 'great caution' in applying public policy to wrongful discharge actions."   *Washington v. Union Carbide Corp.*, 870 F.2d 957, 962–63 (4th Cir. 1989).   A similar sentiment was later voiced by the Fourth Circuit in *Tritle v. Crown Airways,* 928 F.2d 81 (4th Cir. 1990) where the court observed that "a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances."   Moreover, West Virginia's Supreme Court has stated that "[t]he power to declare an employer's conduct as contrary to public policy is to be exercised with restraint."   *Yoho v. Triangle PWC, Inc.*, 336 S.E.2d 204, 209 (W. Va. 1985) and due deference must be afforded "to the West Virginia

legislature as the primary organ of public policy in the state." *See generally Collins v. AAA Homebuilders, Inc.*, 333 S.E.2d 792, 793 (W. Va. 1985) (the West Virginia legislature "has the primary responsibility for translating public policy into law.").

With these sober precepts in mind, the Court turns to the merits of the parties' contentions. Assuming the amended Complaint had identified Article III, Section 17 of the West Virginia Constitution as the source of authority for establishing the substantial public policy element of Plaintiffs' *Harless* claim, the claim would nonetheless fail. Plaintiffs begin their argument by criticizing Defendant for failing to cite "any West Virginia case law that holds that company is free to commit retaliatory discharge, with impunity, when employees are fired for insisting that Defendant comply with wage laws." (ECF 18 at 3.) Plaintiffs seem to forget that when a defendant challenges a court's jurisdiction on a Rule 12(b)(6) motion to dismiss it is a plaintiff's burden to plausibly show that jurisdiction is appropriate. It is Plaintiffs' burden, in the first instance, to offer authority for the essential point that the State of West Virginia has through legislative enactment or judicial opinion found that a citizen's right to seek redress in the courts of West Virginia for injuries sustained is a substantial public policy within the meaning of *Harless*.

With scant exposition, Plaintiffs contend that *Page v. Columbia Nat'l Res., Inc.* 480 S.E.2d 817 (1996) and *McClung v. Marion Ctny Comm'n*, 360 S.E. 2d 221 (1987) support their *Harless* claim. (ECF 18 at 3–4.) Upon close examination of these decisions, the Court finds neither persuasive.

In *Page*, the West Virginia Supreme Court of Appeals held that "it is against substantial public policy of West Virginia to discharge an at-will employee because such employee has given or may be called to give truthful testimony in a legal action." 480 S.E. 2d at 821, Syl. Pt.4. The

West Virginia Supreme Court of Appeals found that the foundation for this policy lay in various state criminal statutes prohibiting perjury, false swearing, witness intimidation, and obstruction of justice.  *Id.* at 825.   Because *Page* does not hold that a West Virginia citizen's constitutional right under Article III, Section 17 of the West Virginia Constitution to petition the courts for redress is a substantial public policy within the meaning of *Harless*, Plaintiffs' reliance on this case is misplaced.

*McClung* is closer to the mark, but nonetheless is readily distinguishable.  *McClung* concerned a public employee, a dog catcher, who filed a lawsuit against the county seeking overtime pay.  360 S.E.2d at 225.   A few days after McClung filed his lawsuit, the county commission fired him.  *Id.*   McClung then amended his complaint and added a retaliatory discharge claim.   The West Virginia Supreme Court held that "[i]t is in contravention of substantial public policies for an employer to discharge an employee in retaliation for the employee's exercising his or her state constitutional rights to petition for redress of grievances (W. Va. Const. Art. III, § 16) and to seek access to the courts of this State (W.Va. Const. Art. III, § 17) by filing an action, pursuant to W. Va. Code, 21–5C–8 [1975], for overtime wages."   360 S.E.2d at 223, Syl. Pt. 2.

*McClung* is not helpful because the plaintiff in that case was a *public* employee.   The Plaintiffs in this case are private sector employees.   The difference has a material legal consequence.   West Virginia's Supreme Court "has been reluctant in the case of a private employee to find a cause of action for retaliatory discharge based on a public policy emanating from the West Virginia or the United States Constitution."   105 W. Va. L. Rev. 827 (2003).  *Tiernan v. Charleston Area Med.* Center, 506 S.E.2d 578 (W. Va. 1998) exemplifies the West

Virginia Supreme Court's restraint in this area.   There, the plaintiff, a nurse, was a private sector employee of a hospital who wrote a letter to the local newspaper that criticized the hospital's budgetary cut-backs.   *Id.* at 580.   The nurse later brought a newspaper reporter to a non-public meeting concerning the hospital's possible merger with another hospital.   *Id.*   The nurse was fired several hours after the meeting.   *Id.*   The nurse unsuccessfully challenged her termination via the hospital's appeal process and then filed a lawsuit alleging, among other things, that her firing violated public policy embodied in the state constitutional right to free speech and association.   *Id.* at 582.   The circuit court granted summary judgment for the hospital.   On appeal, the West Virginia Supreme Court acknowledged that a private sector employee "may sustain, upon proper proof, a cause of action for wrongful discharge based upon a violation of public policy emanating from a specific provision of the state constitution."   506 S.E.2d at 588. The Court noted, however, that only one state legislature in the nation, Connecticut, had extended the full gamut of state and federal constitutional free speech protections to a private employee. The Court then stated:

> This Court believes that it is necessary for the legislature of this state to determine, and so state that public policy emanating from the state constitutional Free Speech Clause is applicable to private employers.   Therefore, we hold, that the Free Speech Clause of the state constitution is not applicable to a private sector employer.   In the absence of a statute expressly imposing public policy emanating from the state constitutional Free Speech Clause upon private sector employers, an employee does not have a cause of action against a private sector employer who terminates the employee because of the exercise of the employee's state constitutional right of free speech.

*Id.* at 591.   Thus, under *Tiernan*, it is plain that the West Virginia Supreme Court is reluctant to sanction a cause of action for retaliatory discharge based on a public policy emanating from the West Virginia or the United States Constitution in the absence of a specific state statute expressly

imposing such public policy.

Plaintiffs do not argue that there is a West Virginia statute expressly recognizing a substantial public policy arising from Article III, Section 17 of the West Virginia Constitution. Notably, there is some evidence that the West Virginia legislature has affirmatively elected *not* to unduly burden a private sector employer's generally absolute right to discharge an at-will employee. For example, the West Virginia legislature enacted whistle-blower legislation to protect *public* employees from retaliation for reporting or assisting in an investigation of an employer's misconduct; the statute, however, does not extend protection to private sector employees. *See* W. Va. Code § 6C–1–3. As such, guided by *Tiernan*, the Court declines to recognize Plaintiffs' *Harless* claim as based on the West Virginia Constitution.

### 4. *Plaintiffs'* Harless *Claim Cannot Be Predicated on the WPCA*

In addition to their state constitutional theory, Plaintiffs also contend that the *Harless* claim may be premised on the WPCA. This Court has previously declined to recognize a new type of *Harless* claim under the WPCA because the West Virginia Supreme Court has interpreted *Harless* so narrowly. *Baisden v. CSC–PA, Inc*., Civil Action No. 2:08-cv-01375, 2010 WL 3910193 *5 (S.D. W. Va. Oct. 1, 2010) (Goodwin, C.J.) (noting that the West Virginia Supreme Court of Appeals has read *Harless* narrowly so as not to "'unlock a Pandora's box of litigation in the wrongful discharge arena.'" (citing *Roberts v. Adkins,* 191 W. Va. 215, 444 S.E.2d 725, 729 (W. Va. 1994))).

Undeterred, Plaintiffs rely on *Roberts v. Adkins* for the proposition that the WPCA is a predicate for their *Harless* claim. Once again, Plaintiffs falter. In *Roberts*, the West Virginia Supreme Court recognized a cause of action for wrongful discharge under Section 21-5-5 of the

WPCA.[1]   There, the major stockholder of the plaintiffs' employer owned a car dealership. Rather than purchase a car from the stockholder's dealership, the plaintiffs opted to buy a car from a dealership that was a competitor of the major stockholder.   Thereafter, the plaintiffs were fired because they did not buy their car from the stockholder's dealership.   The West Virginia Supreme Court observed that Section 21–5–5 was "originally enacted to alleviate the situation in which coal companies required miners to make their purchases at the company store, owned by the coal company, either by deducting said purchases from their wages or by being paid in company script which was spendable only at the company store." 444 S.E.2d at 729.   The Court found that, by enacting Section 21–5–5, the state "legislature not only denounced the unfair practices of the coal companies, but also set forth, via the statute, a substantial public policy against such practice, which is evidenced by the legislature making such practice constitute a criminal misdemeanor." *Id.* at 729.   In contrast, the Plaintiffs in this case pin their WPCA claim to a completely different section of the WPCA, namely, Section 21–5–3.[2]   (*See* Plaintiffs' Complaint, ECF 12 at 12.)

---

[1]  West Virginia Code Section 21–5–5 provides in pertinent part:

> If any corporation, company, firm or person shall coerce or compel, or attempt to coerce or compel, an employee in its, their or his employment to purchase goods or supplies in payment of wages due him, or to become due him, or otherwise, from any corporation, company, firm or person, such first named corporation, company, firm or person shall be guilty of a misdemeanor. . . .

[2]  Section 21–5–3 provides:

> (a) Every person, firm or corporation doing business in this state, except railroad companies as provided in section one of this article, shall settle with its employees at least once in every two weeks, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services.

> (b) Payment required in subsection (a) of this section shall be made:

>> (1) In lawful money of the United States;

>> (2) By cash order as described and required in section four of this article;

>> (3) By deposit or electronic transfer of immediately available funds into an employee's

13

Unlike Section 21–5–5, which imposes criminal penalties, persons aggrieved by a violation of Section 21–5–3 are afforded only civil remedies.  Also, the Court's holding in *Roberts* is expressly tethered to Section 21–5–5 and no other section of the WPCA.  The West Virginia Supreme Court emphasized the narrowness of its holding by stating that its interpretation of

---

payroll card account in a federally insured depository institution. The term "payroll card account" means an account in a federally insured depository institution that is directly or indirectly established through an employer and to which electronic fund transfers of the employee's wages, salary, commissions or other compensation are made on a recurring basis, whether the account is operated or managed by the employer, a third-party payroll processor, a depository institution or another person. "Payroll card" means a card, code or combination thereof or other means of access to an employee's payroll card account, by which the employee may initiate electronic fund transfers or use a payroll card to make purchases or payments. Payment of employee compensation by means of a payroll card must be agreed upon in writing by both the person, form or corporation paying the compensation and the person being compensated.

    (4)      By any method of depositing immediately available funds in an employee's demand or time account in a bank, credit union or savings and loan institution that may be agreed upon in writing between the employee and such person, firm or corporation, which agreement shall specifically identify the employee, the financial institution, the type of account and the account number: Provided, That nothing herein contained shall be construed in a manner to require any person, firm or corporation to pay employees by depositing funds in a financial institution.

(c) If, at any time of payment, any employee shall be absent from his or her regular place of labor and shall not receive his or her wages through a duly authorized representative, he or she shall be entitled to payment at any time thereafter upon demand upon the proper paymaster at the place where his or her wages are usually paid and where the next pay is due.

(d) Nothing herein contained shall affect the right of an employee to assign part of his or her claim against his or her employer except as in subsection (e) of this section.

(e) No assignment of or order for future wages shall be valid for a period exceeding one year from the date of the assignment or order. An assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and any order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: Provided, That no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: Provided, however, That nothing herein contained shall be construed as affecting the right of employer and employees to agree between themselves as to deductions to be made from the payroll of employees.

14

Section 21–5–5

> is in no way intended to unlock a Pandora's box of litigation in the wrongful discharge arena.   It is significant that the purpose of West Virginia Code § 21-5-5 was to eliminate the employer practices of forcing employees to purchase goods at companies owned by the employer but which had nothing to do with the employees' employment.   Similarly, in the present case, the Appellants worked at Mr. Adkins' oil company and were allegedly fired for not purchasing a car at the car dealership owned by Mr. Adkins, but which was in no way related to their employment.

*Id.* at 729–30.   Where this Court has previously refused to recognize the WPCA as a *Harless* predicate, and where Plaintiffs fail to offer any source of West Virginia authority that recognizes the sections of the WPCA on which they mount their claim as *Harless* predicates, this Court rejects Plaintiffs' contention their *Harless* claim may be predicated on the WPCA.

### 5.   *Plaintiffs' Harless Claim is Pre-Empted by the FLSA*

Finally, Plaintiffs as much concede that, to the extent their retaliatory discharge *Harless* claim is based on overtime pay violations, it is preempted by FLSA.[3]   *See* ECF 18 at 5–6.   That tacit concession is prudent.   *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (holding that Congress prescribed exclusive remedies in the FLSA for violations of its mandates).   Based on the amended Complaint, it is apparent that Plaintiffs' *Harless* claim is factually identical to the claim asserted in Count 3 of the amended Complaint.   Count 3 is a retaliatory discharge claim brought under 29 U.S.C. § 218c.   (ECF 12 at 13.)   The alleged factual basis for Count 3 is the retaliatory firing of Plaintiffs after they filed their lawsuit.   (*Id.*)   Section 218c of the FLSA prohibits retaliation by an employer against an employee who has assisted or participated in a

---

[3]   Plaintiffs assert that the *Harless* claim is predicated, not just on the FLSA, but the WPCA as well.   For the reasons discussed *supra*, the Court rejects Plaintiffs' argument that the WPCA serves as predicate for the *Harless* claim.

proceeding concerning a violation of the FLSA.[4]  "It is well established that the anti-retaliation provision of the FLSA is critical to the entire enforcement scheme of the federal wage and hour law."  *Centeno-Bernuy v. Perry*, 302 F. Supp.2d 128, 135 (W.D.N.Y. 2003).   Where Congress has provided a carefully tailored statutory scheme aimed at providing a means of redress for a person who is the victim of a retaliatory discharge, the FLSA provides the exclusive remedy and, thus, Count 4 fails.

Plaintiffs also argue that their *Harless* claim is not solely based on the FLSA.   (ECF 18 at

---

[4]   Title 29, United States Code, Section 218c provides:

(a) Prohibition
No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has--

    (1)    received a credit under section 36B of Title 26 or a subsidy under section 18071 of Title 42;

    (2)    provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of this title (or an amendment made by this title);

    (3)    testified or is about to testify in a proceeding concerning such violation;

    (4)    assisted or participated, or is about to assist or participate, in such a proceeding; or

    (5)    objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment).

(b) Complaint procedure

(1) In general

An employee who believes that he or she has been discharged or otherwise discriminated against by any employer in violation of this section may seek relief in accordance with the procedures, notifications, burdens of proof, remedies, and statutes of limitation set forth in section 2087(b) of Title 15.

(2) No limitation on rights

Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement.   The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment.

5.)   They contend that they were retaliated against not just for filing a lawsuit challenging overtime pay under the FLSA, but also for challenging Asplundh's failure to pay timely regular pay and for unlawful assignment of wages in violation of the WPCA.   (*Id.*)   Plaintiffs have offered no persuasive, much less binding, legal authority that West Virginia has recognized a substantial public policy for such claim under *Harless.*

> 6.    *Plaintiffs'* Harless *Claim Cannot Be Predicated on Unpaid Social Security Contributions Based on the Record in This Case*

Finally, Plaintiffs argue that because Defendant failed to pay matching social security contributions on the unpaid wages qualifies as a substantial public policy supporting the *Harless* claim.   Again, the Complaint contains no such allegation.   The Court rejects this newly-minted theory, where Plaintiff has offered no authority under West Virginia law for this proposition.

### IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for dismissal of Count Four of Plaintiff's First Amended Complaint [ECF 15].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 17, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17