IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**CURTIS WILEY,**
**And all other similarly situated,**

      Plaintiffs,

v.                                                                                Case No. 2:13-cv-2952

**ASPLUNDH TREE EXPERT CO.,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Second Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant (ECF No. 246), Defendant's Response to Plaintiff's Second Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant Asplundh Tree Expert Co. (ECF No. 249) and Plaintiffs' Reply to Defendant's Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant (ECF No. 256).

Plaintiffs' Second Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant Asplundh Tree Expert Co. asserted that Defendant's responses were untimely, improper, not in conformity with the Rules and evasive (ECF No. 246). Plaintiffs further alleged that timesheets for opt-in Plaintiffs were missing. Plaintiffs alleged that computer data provided was unreliable, therefore, they requested this Court grant them access via Asplundh's Telogis account to all the data for all employees in the collective action. (*Id.*)

1

Defendant's Response to Plaintiffs' Second Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant Asplundh Tree Expert Co. reported that if there is additional computer data information, it will be supplemented (ECF No. 249). Defendant asserted that duplicate crew identification numbers were manually removed. Defendant stated that it is researching the time sheets that Plaintiffs claimed were missing. Defendant stated that some of the records no longer exist and such evidence cannot be produced.

Plaintiffs' Reply to Defendant's Response to Plaintiffs' Second Motion to Compel Responses to Plaintiffs' Second Set of Interrogatories and Request for Production of Documents to Defendant Asplundh Tree Expert Co. asserts that two specific areas of Plaintiffs discovery remain unanswered. Plaintiffs assert that the parties were unable to agree on (1) the manner of production of the computer tracking system's (hereinafter AVMS) data for the vehicles in which the Plaintiffs were assigned to work and (2) the time period used by Defendant in determining when employment records are to be produced for opt-in Fair Labor Standards Act (hereinafter FLSA) Plaintiffs (ECF No. 256).

<u>Manner of production of AVMS computer data</u>

Plaintiffs report that the parties have exchanged some paper information about the computer tracking system (AVMS) for Defendant's fleet of vehicles in which the Plaintiffs were assigned to work. However, the parties have not been able to agree on the issue of producing the electronically stored information in native file format. Plaintiffs assert there has been production, although, only in paper reports that were created by Defendant or its system vendor, Telogis, without allowing Plaintiffs access to the underlying computer data in native file format (ECF No. 256). Plaintiffs request this Court to grant access to Asplundh's Telogis account to obtain all

relevant, native AVMS data.

Defendant asserts that the compilation of AVMS information produced in its discovery responses show when the trucks were first started and when they were turned off on each day "of the relevant three-year period" (ECF No. 249). Defendant's Response states that it will produce additional records if they exist[1]. Discovery requests in this matter are to be completed by February 2, 2015 (ECF No. 253).

Time period for opt-in Plaintiffs

Plaintiffs asserted that Defendant failed to provide records for the FLSA opt-in plaintiffs, who opted into the case at a date later than the original filing of this suit. Plaintiffs state that "in reviewing the produced timesheets [], it is apparent that many timesheets for many opt-in Plaintiffs are missing." Plaintiffs proceeded to aver that "Defendant has neglected to produce any timesheets at all for seven (7) opt-in Plaintiffs" (ECF No. 246). Plaintiffs presented that the parties are not in disagreement about the scope of production regarding employment records, but disagree to the "window" of records for the opt-in FLSA plaintiffs. In regards to the FLSA Plaintiffs that were in the case since the original filing, Defendant provided records beginning three (3) years from the date of filing, January 2013, to January 2010. On the opt-in FLSA Plaintiffs, Defendant produced records beginning three (3) years from the date of the individual Plaintiff's opt-in date. Plaintiffs seek records for the opt-in FLSA plaintiffs beginning the date of the original filing. Specifically, Plaintiffs request "that a timesheet be produced in native file format for each client for each week he was employed by Asplundh Tree Expert Company," as well as attorney's fees and costs for the prosecution of the underlying motion. (*Id.*)

---

[1] Defendant's Reply stated that "There were no timesheets produced for employees who did not work for Asplundh in the three years prior to when their respective consents to join were filed" (ECF No. 249).

3

Defendant states that it responded to Plaintiffs' discovery requests by generating a report showing each plaintiff was paid under "the relevant time periods." Defendant states that "There were no timesheets produced for employees who did not work for Asplundh in the three years prior to when their respective consents to join were filed" (ECF No. 249). Regarding the alleged missing timesheets, Defendant states that "It is likely that in some instances the Plaintiff is claiming that documents were not produced when in fact there are none (*i.e.*, where there are payroll records but no time sheets due to bonus payments)." Defendant reported that it will look into each of the items raised by Plaintiffs both internally and through a third party vendor who owns the data. Defendant asserted that it will produce the additional records if they exist. Defendant requests that Plaintiffs' Motion to Compel be denied and Defendant be awarded the fees and costs associated with responding to the motion.

Discussion

Plaintiffs allege that they were not paid for working over forty (40) hours per week. They assert that they worked from 7:00 a.m. to 5:30 p.m. In an attempt to confer, Plaintiffs informed Defendant in a letter dated April 28, 2014, that it failed to produce a complete list of fleet vehicles in a discovery response. Plaintiffs specifically assert that Defendant failed to include numerous requested data fields in the AVMS records produced (ECF No. 246-2). Defendant asserts that a report was generated showing all plaintiffs' timesheet information. Defendant reports that a temporary employee was hired to assist with compiling the production of records (ECF No. 249). Although Defendant believes the records provided are reliable, it will produce additional records if they exist[2]. (*Id.*)

---

[2] Defendant asserts "The records speak for themselves and the fact that it does not support the Plaintiffs does not equate to the documents being unreliable" (ECF No. 249).

Plaintiffs assert in their Second Motion to Compel that they believe the truck numbers and timesheets produced by Defendant in responses are not complete, therefore, Plaintiffs request "a full and complete copy of the list and the AVMS records in native file format" (ECF No. 246). Plaintiffs seek access to Asplundh's Telogis account to obtain all relevant, native AVMS data. (*Id.*) In an age of technology, data can be generated and stored as a byproduct of various information technologies commonly employed by parties in the ordinary course of business, but not routinely retrieved and used for business purposes. Manual for Complex Litigation, Fourth Edition, p. 78 (2004). The court should consider how to minimize and allocate the costs of production. Narrowing the overall scope of electronic discovery is the most effective method of reducing costs. Early agreement between the parties regarding the forms of production will help eliminate waste and duplication. Manual for Complex Litigation, Fourth Edition, pp. 80-81. The Manual for Complex Litigation, Fourth Edition, states:

> Computer-stored data and other information responsive to a production request will not necessarily be in an appropriately labeled file. Broad database searches may be necessary, requiring safeguards against exposing confidential or irrelevant data to the opponent's scrutiny. A responsive party's screening of vast quantities of unorganized computer data for privilege prior to production can be particularly onerous in those jurisdictions in which inadvertent production of privileged data may constitute a waiver of privilege as to a particular item of information, items related to the relevant issue or the entire of data collection. (*Id.*)

Pursuant to the Amended Scheduling Order entered March 19, 2014, the deadline for written discovery request is November 3, 2014 (ECF No. 218). As Defendant has previously produced documents in response to the request and the discovery deadline is approaching, it would be onerous and duplicative for Defendant to now produce the list of trucks and the AVMS records in native file format fourteen (14) days before the discovery deadline.

The FLSA "embodies a federal legislative scheme to protect covered employees from prohibited employer conduct." *LaFleur v. Dollar Tree Stores, Inc.,* Civil Action: 2:12-cv-00363

(E.D. Va. 2012) citing *Houston et al. v. URS Corp. et al.*, 591 F. Supp. 2d 827, 831 (E. D. Va. 2008). Generally, "the FLSA provides that an employer must pay an employee one and one-half times the employee's 'regular rate' for all hours worked in excess of forty per week. The 'regular rate' is the hourly rate that the employer pays the employee for the normal, non-overtime workweek. Normally, the regular rate is arrived at by dividing [the] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked." *Lee v. Vance Executive Protection, Inc.,* 7 Fed.Appx. 160, 163 (4th Cir. 2001) (internal citations omitted).

Claims under the Fair Labor Standards Act for unpaid minimum wages, unpaid overtime compensation, or liquidated damages are subject to a statute of limitations which requires parties to commence their case within two years of the accrual of the action. 29 U.S.C. § 255(a). However, if the cause of action arises out of a willful violation of the FLSA, a plaintiff is given three years to commence an action. *Id.* An action is considered "commenced" under the FLSA "on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought" or "if such written consent was not so filed or if his name did not so appear - on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. §§ 256(a), 256(b). As a result, a plaintiff that opts into a collective FLSA suit is limited to looking back two or three years for violations of the FLSA by their employer. A violation of the FLSA is considered "willful" if an employer either knew it was violating the FLSA or "showed reckless disregard" toward it. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988). The burden of showing that

an FLSA violation was "willful" falls on the plaintiff.  *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011).

The doctrine of equitable tolling applies to all federal statutes of limitations.  *See Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 90 L. Ed. 743 (1946).  To determine whether to apply the doctrine, "the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations …." *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424, 427, 85 S. Ct. 1050, 13 L. Ed. 2d 941 (1965).  The Supreme Court has recognized that equitable tolling is a rare remedy to be applied in usual circumstances, not a cure-all for an entirely common state of affairs."  *Wallace v. Kato*, 549 U.S. 384, 396, 127 S. Ct. 1091, 166 L. Ed. 973 (2007).  The United States Court of Appeals for the Fourth Circuit has held on a number of occasions that equitable tolling is an extraordinary remedy and that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

Under both U.S. Supreme Court and Fourth Circuit precedent, equitable tolling is deemed appropriate where: (1) "claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," or (2) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."  *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 435, 112 L. Ed. 2d 435 (1990).  In addition to these recognized grounds, the Fourth Circuit also permits equitable tolling when extraordinary circumstances beyond a plaintiff's control prevents timely filing of one's claims.  *Chao*, 291

7

F.3d at 283. As indicated by the *Irwin* Court, equitable tolling is not permitted "where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

The Northern District of West Virginia has held that "the burden for the court is always balancing the burden on the defendant against the clear relevance of the information being sought." *Byard v. Verizon West Virginia Inc.*, Civil Action No. 1:11-CV-132 (N.D. West Virginia, January 2, 2013 (citing *Clarke v. Melton Bank*, 1993 WL 170950 E.D. Pa. May 11, 1993)). In *Byard*, the plaintiffs sought the discovery of information beyond the three (3) year statute of limitations period under the FLSA. Plaintiffs sought information extending the scope of discovery to five (5) years prior to filing a claim, regarding willfulness concerning the decision making process and rationales used or adopted by Defendants. In *Byard*, the Northern District of West Virginia ruled that "Such a time frame should allow for the capture of the corporate decision making process leading up to the actual implementation of the complained practice." (*Id.*)

In the present case, Plaintiffs failed to demonstrate a need for the discovery of information beyond the three (3) years. In contrast to *Byard*, Plaintiffs did not assert any sufficient reasons for the discovery of information beyond the three (3) year statute of limitations. On November 27, 2013, Plaintiffs filed a Motion for Equitable Tolling of the FLSA Statute of Limitations asserting that Defendant had failed to provide an adequate list of current and former similarly situated employees (ECF No. 164). Plaintiffs asserted that claims of putative opt-in plaintiffs could become time-barred before potentially similarly-situated individuals receive notice of the action.

In response to Plaintiffs' Motion for Equitable Tolling of the FLSA Statute of Limitations, this Court held, on January 15, 2014:

> The fact that a statute creates procedural requirements that limit some potential claimants' participation in a suit, standing alone, is insufficient to toll the statute of limitations.  The FLSA, 29 U.S.C. §§ 216(b) and 256, requires that the statute of limitations continue to run for a potential claimant in a FLSA collective action until he or she consents in writing to become a party plaintiff.  "Congress contemplated a gap between the time a collective action is initiated and the time the statute of limitations is tolled by the filing of an opt-in consent." *LaFleur*, at *18 (quoting *Noble v. Serco*, No. 08-0076, 2009 U.S. Dis. LEXIS 93816, 2009 WL 3254143, at *2 (E.D. Ky. Oct. 7, 2009)).
>
> Plaintiffs have failed to demonstrate that Defendant failed to disclose the names and addresses of all current or former similarly situated employees at the Hamlin, Ripley, Logan, Point Pleasant, Wayne and Huntington Lots.  [ ] Plaintiffs have not demonstrated any extraordinary circumstances that would justify equitable tolling in this case, at this time.

This Court held that "Plaintiffs [ ] failed to make a sufficient showing to justify its application for equitable tolling of the statute of limitations at this time" (ECF No. 196).  In the present matter, Plaintiffs point out in his Reply that this Court stated in the January 2014 Order that "While not finding adequate grounds for equitable tolling at this time, Plaintiffs may bring more specific evidence as to particular plaintiffs that may warrant application of the doctrine of equitable tolling at a later date" (ECF No. 256).  Such specific evidence has not been presented by the Plaintiffs.

Plaintiffs assert that Defendant provided records for opt-in FLSA plaintiffs from three (3) years before the date the individual plaintiff's opted in.  Plaintiffs assert that by Defendant doing so, there is a missing "window" of records for the opt-in FLSA plaintiffs from the date of opt-in.  Plaintiffs' FLSA claim should not be equitably tolled because Plaintiffs failed to demonstrate sufficient facts to show the extraordinary circumstances required for the doctrine of equitable tolling to be applied.

For the reasons stated above, it is **ORDERED** that Plaintiffs' Second Motion to Compel (ECF No. 246) is **GRANTED, in part, and DENIED, in part**.  It is **ORDERED** that Defendant

shall supplement discovery responses in the format previously provided.[3]  Plaintiffs' request for records prior to three (3) years preceding a plaintiff's opt-in is **DENIED**.  Parties shall bear their own costs for bringing this matter before the Court.

    The Court directs the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

    ENTERED:  October 24, 2014

                                                 Dwane L. Tinsley
                                                 United States Magistrate Judge

---

[3] The parties entered into a Protective Order on August 22, 2013 (ECF No. 137).